IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Kanhnell Christian, | ) | Case No.: 1:21-cv-01254-JD-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **OPINION & ORDER** |
| United States of America, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

This matter is before the Court with the Report and Recommendation of United States Magistrate Shiva V. Hodges ("Report and Recommendation") (DE 31), made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2) of the District of South Carolina.[1] Kanhnell Christian ("Christian" or "Plaintiff"), brings a claim against the Defendant United States ("Defendant") pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b) ("FTCA"), asserting claims for medical malpractice and negligence among other causes of action. During the relevant period, Plaintiff was a federal prisoner incarcerated at the Federal Correctional Institution in Estill, South Carolina ("FCI-Estill"); he currently resides in Upper Darby, PA. (DE 1, ¶ 1, DE 24-1 at 8:3–8.) While incarcerated, Plaintiff was seen by an eye specialist, the specialist told the prison's doctor that Plaintiff needed an appointment with another specialist STAT, and the prison doctor requested the appointment. However, Plaintiff did not see the outside specialist for over four and

---

[1] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. See Mathews v. Weber, 423 U.S. 261, 270-71 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

1

a half months after the request was made. Consequently, Plaintiff has lost the use of one of his eyes, among other damages.

Presently before the Court is Plaintiff's Motion for Summary Judgment (DE 24) asserting Defendant committed malpractice because Plaintiff was reliant on Defendant through the Bureau of Prisons ("BOP") for his medical needs. Defendant has filed a response (DE 27), and Plaintiff has replied (DE 28). On April 6, 2022, the Magistrate Judge issued the Report, recommending summary judgment on Plaintiff's gross negligence claim. (DE 31.) For the reasons stated below, the Court adopts the Report and Recommendation, and grants Plaintiff's Motion for Summary Judgment on his gross negligence claim.

## **BACKGROUND**

The Report sets forth the relevant facts and legal standards, which this Court incorporates herein without a full recitation. However, as a brief background relating to the objections raised by Defendant, the Court provides this summary.

On June 5, 2019, Plaintiff had an eye appointment with Dr. David McKenzie ("McKenzie"), an optometrist who independently contracts to perform services for the BOP. (DE 24-1 at 51:8-10, DE 27-1.) McKenzie examined Plaintiff's left eye and made STAT referral for him to be seen by a retina specialist. (DE 24-1 at 27:21–24, DE 27-1 at 4) ("STAT retina consult to exclude possible malignant choroidal melanoma OS"). The following day, Dr. Richard Lepiane ("Lepiane"), the clinical medical director at FCI-Estill, received the referral and documented in the medical record that he requested an appointment for Plaintiff, as follows: "[Plaintiff] was seen by optometry yesterday He has a possible malignant choroidal melanoma OS[] an urgent ophthalmology consult has been approved and is pending . . .[.]" (DE 27-1 at 1, DE 24-1 at 9:6, 70:2–7.) Lepiane testified that he consulted with McKenzie about the timing of the appointment

and was informed that Plaintiff did not need to be seen the same day, but "[i]t needed to be done as quickly as possible." (DE 27-1 at 37:18–20.)

Plaintiff has named Dr. Manual Chaknis ("Chaknis") as his expert. (DE 18.) Chaknis is an ophthalmologist licensed in several states, including South Carolina, and board certified by the American Board of Ophthalmology. (DE 24-3 at 5:3–7.) Chaknis testified the standard of care for a patient presenting with Plaintiff's condition is to refer the patient to a retina specialist, contact the retinal specialist, and arrange for the patient to be seen within two days. Id. at 14:19–25. Chaknis defines STAT as "as soon as physically possible," which typically means the patient needs to be seen within the next day or two. Id. at 12:11–16. Chaknis opined the Defendant breached the standard of care "[b]ecause it was recommended that he have a stat consult with a retina specialist and that didn't occur for many months." Id. at 13:9–17.

Plaintiff did not receive an appointment with a retina specialist until October 21, 2019—more than four and a half months after "an urgent ophthalmology consult ha[d] been approved," as stated by Lepiane. (DE 24-2.) In the interim, one or two appointments were made with Medical University of South Carolina, Goulas Eye Clinic, but were canceled in that "Goulas Eye was not equipped to handle [Plaintiff's] situation." (DE 24-2, DE 28-3.) As a result, Chaknis testified in part as to what occurred due to the delay in Plaintiff receiving treatment:

> It appears from those records that he just has a significant loss of vision in the left eye that's permanent. And so, basically, he has one functioning eye, so he's a monocular patient at this point . . . . When you have a patient that has had a chronic total retinal detachment that's been repaired there can be a repair of the structures, but as you can see, the function of the eye didn't come back. There are multiple problems that can develop in an eye with that sort of deficit. One can develop cataracts, glaucoma, infection, inflammation. And there's even a condition called sympathetic ophthalmia where a blind or near blind eye can have an immune-related problem that can actually lead to loss of vision in the other eye. So even though his vision in the left eye is very poor, he's going to need consistent dilated exams at least once a year as a bare minimum [costing $400 to $500 per exam] to make sure that he doesn't develop other possible complications that could be a

3

problem with that eye and /or the other eye . . . . And that's if he only requires one exam a year, which he may require more. So that would be a very basic least scenario.

(DE 24-3 at 15:22–17:17.) Chaknis also testified that Defendant was grossly negligent in treating Plaintiff because of the significant delay. Id. at 22:23–25.

Defendant initially named Lepiane as its expert witness. (DE 21.) Lepiane testified in his deposition that he is responsible for the medical care of all inmates. (DE 24-1 at 53:22–24.) He further testified that anything that happens to an inmate at FCI-Estill is his responsibility as clinical director. Id. at 53:22–54:1. Lepiane testified that Plaintiff "did not get the care he should have gotten." Id. at 60:14–18. He testified that he would not and did not offer any opinion as to the relevant standard of care in this situation or whether the United States met that standard in treating Plaintiff. Id. at 11:18–25, 79:4–7.

## DISCUSSION

Defendant filed an Objection to the Report on April 19, 2022; however, to be actionable, objections to a report and recommendation must be specific. Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge. See United States v. Schronce, 727 F.2d 91, 94 & n.4 (4th Cir. 1984). "The Supreme Court has expressly upheld the validity of such a waiver rule, explaining that 'the filing of objections to a magistrate's report enables the district judge to focus attention on those issues -- factual and legal -- *that are at the heart of the parties' dispute*.'" Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (2005) (citing Thomas v. Arn, 474 U.S. 140 (1985) (emphasis added)). In the absence of specific objections to the Report and Recommendation of the magistrate judge, this court is not required to give any explanation for adopting the recommendation. See Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

Defendant raises two objections to the Report and Recommendation. First, Defendant objects to the Report claiming that "the magistrate judge erred when she recommended granting Christian's motion for summary judgment because she found gross negligence, which requires an 'intentional conscious failure,' without pointing to anything in the record to show such a failure." (DE 32, p. 1.) However, this objection overlooks and mischaracterizes the Report's recommendation. The Report offers the following summary of the Defendant's testimony,

> the undisputed record shows Lepiane knew Plaintiff needed an appointment quickly, Lepiane was responsible for Plaintiff's care, and Plaintiff was not seen by a specialist for over four and a half months. Defendant has offered no reason, or evidence, for the delay Plaintiff experienced in receiving treatment.

(DE 31, p.13.) Hence, "Lepiane testified that Plaintiff 'did not get the care that he should have gotten[.]'" Id. Moreover, the Report adeptly pointed to testimony of the Defendant's "intentional conscious failure." For example, Lepiane testified that,

> Q: Did you see the stat referral by Dr. McKenzie in his note for ophthalmology?
>
> A: Yes, sir. I saw it. I talked to Dr. McKenzie and he said this guy needs to go out urgently, that there was something here he was concerned about and he needed to go out to see an eye—an eye specialist. And so we tried to make those arrangements for him . . . .
>
> Q: And what's the medical definition of stat?
>
> A: Well, again, you have to individualize each patient, but this guy needed to go out urgently. He couldn't wait . . . .
>
> A: I'm the clinical director here at the prison. I'm responsible for the overall care of the inmates. Anything that happens to them is my responsibility, medically, as far as any medical concerns are. Did I personally have anything to do with why trips were cancelled or anything else like that? No, sir, I'm not. My job is to oversee that care, and I do that to the best of my ability. Yes, I'm ultimately responsible for everything that happens here at the prison . . . .
>
> Q: So, for the purposes of this question, I want you to assume Dr. Chaknis is right, that stat means 48 hours. If, in fact, it was not done, that Mr. Christian did not see an ophthalmologist for his eye not only not within 48 hours but close to four and a half months, would you agree that that is well beneath the standard of care of shows the lack of any care for Mr. Christian?

A: Well, it's a delay in care, no doubt. He should have been seen sooner.

(DE 31, pp. 13-14.) Although Defendants suggest that this testimony merely shows that Lepiane accepts responsibility for the medical care of inmates as clinical director but since he does not handle scheduling and transport to outside appointments gross negligence cannot lie. This Court disagrees. The Report correctly notes that cases involving deliberate indifference to a serious medical need "requires a much higher standard of fault than mere or even gross negligence[.]" Ray v. S.C. Dep't of Corr., C/A No. 9:19-147-TMC, 2021 WL 1540928, at *10 (D.S.C. Apr. 20, 2021) (citing A.P. ex. Rel. Bazerman v. Feaver, C/A No. 04-15645, 2008 WL 3870697, at *12 (11th Cir. Aug. 21, 2008)). Furthermore, the Report indicated that courts have repeatedly found violations of the Eighth Amendment where a STAT referral or need is not promptly addressed. See, e.g., Duncan v. Duckworth, 644 F.2d 653, 654 (7th Cir. 1981) (inferring deliberate indifference based on "failure to promptly schedule surgery, once the need for it was recognized and in the face of [the prisoner's] repeated complaints"). The above recommendations coupled with Lepiane's testimony that Plaintiff "did not get the care he should have gotten[,]"that he would not and did not offer any opinion as to the relevant standard of care in this situation or whether the United States met that standard in treating Plaintiff, counsels against Defendant's objection. To that end, this Court overrules Defendant's objection.

As to Defendant's second objection, Defendant claims that "Christian's expert witness, an ophthalmologist, is not qualified to opine on the standard of care of a general practitioner such as Dr. Lepiane." (DE 32, p. 2.) Defendant raised a similar argument in its response to Plaintiff's Motion for Summary Judgment. It appears Defendant believes that because Chaknis is a specialist, he is not qualified to opine regarding the standard of care for general practitioner. Again, Defendant mischaracterizes the Report's recommendation on this issue. The Report rightly characterizes the issue before the Court as follows:

> [i]n briefing, Defendant appears to concede much of the above, arguing only that Plaintiff's expert witness, Chaknis, who is a specialist in ophthalmologist, is not qualified 'to testify as to the standard of care of a general practitioner such as Dr. Lepiane.' (Citation omitted). In support, Defendant cites case law holding that the standard of care for a specialist is different than that of a general practitioner. (Citation omitted).
>
> Defendant's case law does not support its argument, nor address the issue before the court, as to whether Chaknis is qualified to testify as to the standard of care that should have been exercised by Lepiane. Plaintiff has submitted Chaknis's extensive qualifications, including that he has been part of the medical community for approximately 30 years; he is board certified by the American Board of Ophthalmology and the Boards of Medicine of Florida, North Carolina, Tennessee, Arkansas, Alabama, South Carolina, and Georgia; *and he has treated inmates in multiple settings, including in the emergency room, office settings, and surgical settings.* (Citations omitted). Defendant has submitted no evidence or argument that Chaknis is not qualified to opine as to the standard of care that should have been provided by Lepiane, particularly, where, here, the standard of care at issue is for the medical provider to follow the STAT order of the optometrist.

(DE 31, pp. 10-11) (emphasis added). With these qualifications at hand, the Federal Rule of Evidence 702 requires an expert to be qualified "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "[A] witness'[s] qualifications to render an expert opinion are [] liberally judged by Rule 702. Inasmuch as the rule uses the disjunctive, a person may qualify to render expert testimony in any one of the five ways listed: knowledge, skill, experience, training, or education." Kopf v. Skyrm, 993 F.2d 374, 377 (4th Cir. 1993). "Accordingly, a challenge based on lack of qualifications alone must demonstrate that 'the purported expert [has] neither satisfactory knowledge, skill, experience, training nor education on the issue for which the opinion is proffered.'" In re Pella Corp. Architect & Designer Series Windows Mktg., Sales Practices & Prods. Liab. Litig., 214 F. Supp. 3d 478, 496 (D.S.C. 2016) (quoting Thomas J. Kline, Inc. v. Lorillard, Inc., 878 F.2d 791, 799 (4th Cir. 1989)). While Defendant challenges whether an ophthalmologist, is qualified to testify to the standard of care of Dr. Lepiane, a general practitioner, this challenge ignores Chaknis' other skills and experience treating inmates in multiple settings, including in the emergency room, office settings, and surgical settings. Having reviewed the

7

record, the Court is convinced that Chaknis is qualified to give opinion testimony regarding the standard of care for general practitioners in prisons.  Therefore, the Court disagrees with the Defendant's objection.

Accordingly, after a thorough review of the Report and Recommendation and the record in this case, the Court adopts the Report and Recommendation and incorporates it herein as modified.

It is, therefore, **ORDERED** that Plaintiff's Motion for Summary Judgment (DE 24) is granted.

**IT IS SO ORDERED.**

_____
Joseph Dawson, III
United States District Judge

Greenville, South Carolina
May 3, 2022


**NOTICE OF RIGHT TO APPEAL**

Plaintiff is hereby notified that it has the right to appeal this order within sixty (60) days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.